# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

|  |  |  |
|---|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe<br>the object or property to be used for tracking)*<br>A gold 1998 Toyota Camry, 4-door, bearing<br>Wisconsin license plate AEB-5988, VIN 4T1BG28KA<br>and a blue 2015 Kia Sorento SUV, bearing Wisconsin<br>license plate 449-XFH, VIN 5XYKT4A6XFG606970 | )<br>)<br>)<br>)<br>)<br>) | Case No. 19-M-038 |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of ___21___ U.S.C. § ___846___ . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

☐ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:

☑ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Nathan Piennes, Task Force Officer
*Applicant's printed name and title*

Sworn to before me and signed in my presence.

Date: __April 4, 2017__

_____
*Judge's signature*

City and state:  Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Nathan Plennes, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an electronic tracking device to determine the location of a vehicle more particularly described as a gold 1998 Toyota Camry, 4-door, bearing Wisconsin license plate AEB-5988, VIN 4T1BG28K4WU842892 (hereinafter "**Target Vehicle #1**") and a blue 2015 Kia Sorento, SUV, bearing Wisconsin license plate 449-XFH, VIN 5XYKT4A6XFG606970 (hereinafter "**Target Vehicle #2**").

2.      I am employed as a Detective with the Waukesha County Sheriff's Department and have been a law enforcement officer for over nine years. I have been a Detective for almost five years and have been assigned to the High Intensity Drug Trafficking Area (HIDTA) for over two years. I was previously assigned to the Waukesha County Metropolitan Drug Enforcement Group as a Deputy Sheriff for 11 months. I am also a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been since August 2016. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.      I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have

participated in complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

a.  I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.  I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.  I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.  I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.  I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.  I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.  I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.  I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.  I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

2

4.    I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.    Based upon my training and experience, I know that a "controlled buy" is a term which refers to a situation in which a confidential informant works with law enforcement officers regarding the purchase of a controlled substance from person(s) at a known address or in a known vehicle; that law enforcement searches the person, clothing, and, if applicable, the vehicle of the informant to make sure that the informant has no controlled substances or monies on their person; that law enforcement gives the informant money and watches the informant walk into the known targeted residence or vehicle; that law enforcement watches the informant walk out of the known targeted residence or vehicle a short time later and return to law enforcement; that the informant gives law enforcement the controlled substance(s) which the informant has purchased inside the residence or vehicle and relates to law enforcement the circumstances of the purchase; and that law enforcement again searches the informant to make sure that the informant has no controlled substances or monies on the informant's person or clothing or, if applicable, in the informant's vehicle.

7.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846, have been committed, are being committed, and will be committed by Ananda MUJICA and Ivan NUNEZ. There is also probable

3

cause to believe that the location of **Target Vehile #1 and Target Vehile #2** will constitute evidence of those criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

1. In November 2018, a Confidential Source, hereinafter referred to as "CS," provided case agents information regarding Ananda MUJICA and her boyfriend, Ivan NUNEZ, who were selling heroin on the south side of Milwaukee. The CS told case agents the CS had been purchasing heroin from MUJICA for the past six months and recently started purchasing heroin from MUJICA's boyfriend, NUNEZ, after he moved to Milwaukee from New York. The CS reported that MUJICA called the heroin the CS purchased from MUJICA "the white." The CS stated "the white" heroin the CS purchased was of a better quality than the other varieties of heroin the CS had purchased from MUJICA in the past. The CS admitted to having an outstanding drug debt with MUJICA for heroin the CS had obtained from MUJICA in the past. The CS had an outstanding debt of $5,800 when the CS started providing information to law enforcement about MUJICA. The CS is known to be a user of heroin.

2. Case agents believe the CS is a credible person because the CS has been providing reliable information to DEA since December 2018. Additionally, the CS has conducted multiple controlled purchases of heroin, fentanyl, and cocaine resulting in the seizure of controlled substances. The CS' information concerning MUJICA and NUNEZ has been corroborated by telephone records, Wisconsin Department of Transportation records, Circuit Court records, physical surveillance, and through controlled drug purchases. The CS' information has never been found to be false or misleading. The CS has a criminal history that includes arrests for Manufacture/Deliver Heroin and Recklessly Endangering Safety. The CS has a pending criminal

4

case involving a fatal heroin oversdose. The CS provided the the fatal dose of heroin the caused the death of the victim. The CS has stated that MUJICA sold him the heroin that resulted in the death of the victim. The CS has a First Degree Reckless Homicide charge pending based upon the fatal overdose and is receiving consideration in return for this information and assistance.

3.      On December 4, 2018, the CS contacted MUJICA at (414) 509-4376 and asked to purchase 10 grams of heroin.[1] While arranging the heroin transaction, MUJICA told the CS they did not have the "white one yet" and asked the CS if the CS "still wanted it." The CS replied "yes." Case agents met with the CS at a predetermined location. Case agents searched the CS and the CS' vehicle for any drugs, money, or weapons with negative results. The CS was provided $1,300 in pre-recorded buy money and a covert audio/visual recorder. The CS was directed to use $500 of the pre-recorded buy money for the prior drug debt and $800 of pre-recorded buy money for the 10 grams of heroin. After meeting with case agents, the CS drove to the 1100 block of North 20th Street in Milwaukee and waited to meet MUJICA. A short time later, case agents observed **Target Vehicle #1,** arrive at the same location and park in front of the CS vehicle. Case agents observed the CS exit the CS' vehicle and enter the front passenger door of the **Target Vehicle #1.** Less than two minutes later, the CS exited **Target Vehicle #1,** returned to the CS' vehicle, and drove to a pre-determined location.

4.      Once at the pre-determined location, the CS turned over to case agents a baggie containing approximately 10 grams of suspected heroin, which appeared tan in color and rock like in appearance. The CS told case agents that when the CS arrived at the buy location the CS received an incoming phone call from MUJICA and MUJICA told the CS, "he's outside." The CS then

---

[1] The CS only communicates with MUJICA using text messages.

observed **Target Vehicle #1** arrive. When the CS entered **Target Vehicle #1**, the CS observed a Hispanic male operating the vehicle and the CS stated this Hispanic male was the sole occupant. The CS further told case agents this Hispanic male was the same person the CS had dealt with in the past to purchase heroin and the CS believed this Hispanic male was the boyfriend of MUJICA. The CS told case agents the Hispanic male told the CS "the white" would not be available until Sunday afternoon. Case agents showed the CS several City of Milwaukee Police Department booking photographs and the CS identified the Hispanic male the CS obtained heroin from as Ivan Alexis NUNEZ. Case agents later subjected the suspected heroin to the Nark II #33 field test and received a positive test result for the presence of Fentanyl with a weigh of 10.59 grams.

5. On December 13, 2018, the CS contacted MUJICA at (414) 509-4376 to arrange another purchase of heroin. The CS told MUJICA the CS wanted to purchase 20 grams of heroin. During the text conversation between the CS and MUJICA, MUJICA told the CS, "Hey he going to pass a sample first sinse is new to check first." The CS and case agents believed this to indicate the CS would receive a small amount of a different type of heroin MUJICA had received from her source of supply. The CS asked if the "new" heroin was "white" and MUJICA said, "Yes imis white well let me now when u available to take u the sample." The CS asked "U getting bad feed back," inquiring whether MUJICA's other customers had been indicating the heroin was of poor quality. MUJICA replied, "we just got it and is better if try it first is not the same but is white." The CS told MUJICA "I'm out so the samp won't b enough. If its better I'm sure ima want it so I want 13 and want 7 separate n I'll let u know when I'm ready." Case agents are aware, through this conversation, the CS told MUJICA the CS was out of heroin ("I'm out") and that the "sample" MUJICA was offering would not be enough heroin for the CS ("...the samp won't b enough"). The CS further said the CS would contact MUJICA once the CS was ready.

6

6.     Case agents met with the CS at a pre-determined location. Case agents searched the CS and the CS' vehicle, for any drugs, money, or weapons with negative results. Case agents provided the CS with $2,000 in pre-recorded buy money as well as a covert audio/video recording device. The CS was directed to use $340 of the pre-recorded buy money for the prior drug debt owed to MUJICA and $1,660 of the pre-recorded buy money to purchase the 20 grams of heroin. Case agents followed the CS to the 1100 block of North 20th Street in Milwaukee, where the CS parked. A short time later, case agents observed **Target Vehicle #1**, arrive and park behind the CS' vehicle. At approximately that same time, the CS received a text message from MUJICA which stated, "outside." Case agents observed the CS exit the CS' vehicle and enter the front passenger door of **Target Vehicle #1**. Less than 3 minutes later, case agents observed the CS exit **Target Vehicle #1** and re-enter the CS' vehicle. Case agents observed the CS vehicle depart the area and **Target Vehicle #1** also departed the area. Case agents observed Ivan NUNEZ was the only occupant and driver of **Target Vehicle #1**. Surveillance units attempted to follow **Target Vehicle #1** for a short time but terminated surveillance to avoid being detected.

7.     Case agents met with the CS at a predetermined location. The CS turned over to case agents a baggie containing suspected heroin. The CS told case agents that when the CS parked at the meet location the CS received a text message from MUJICA which read, "outside." At around that same time **Target Vehicle #1** pulled up behind the CS. The CS said when the CS entered **Target Vehicle #1** NUNEZ was the only occupant in the vehicle. The CS stated that NUNEZ told the CS the "white" was different from the "white" the CS had previously purchased from NUNEZ. The CS stated the CS paid NUNEZ $1,100 of the buy money for 13 grams of "white" heroin and $560 of the buy money for 7 grams of "tan" heroin. The CS stated NUNEZ gave the CS a plastic baggie which was tied in a knot. Contained within that baggie were two other

7

corner cut baggies. One contained the "white" heroin and one contained "tan" colored heroin. In addition to the two corner cut baggies, the outer baggie contained loose "samples" of both "tan" and "white" heroin. The CS further stated that NUNEZ told the CS if the CS did not like the heroin the CS purchased the CS could contact NUNEZ's girlfriend (MUJICA).

8. Case agents subjected a sample of the "tan" heroin to the Nark II #33 Fentanyl Reagent test and received a positive result for fentanyl with a weight of 8.27 grams. Case agents subjected a sample of "white" heroin to the Nark II #33 Fentanyl Reagent test and did not receive a positive result for fentanyl. Case agents then subjected a sample to the Nark II #7 Scott Reagent Modified Field test and received a positive result for cocaine with a weight of 14.94 grams.

9. On December 20, 2018, case agents conducted surveillance of the residence 2608 W. Mitchell Street and at approximately 8:15 a.m. case agents observed **Target Vehicle #2**, parked in front of 2608 W. Mitchell Street. Case agents know this residence to be the known residence of Ananda MUJICA and Ivan NUNEZ. While case agents continued to surveil the residence, case agents observed NUNEZ exit 2608 W. Mitchell Street and enter the driver door of **Target Vehicle #2**. NUNEZ started the vehicle and drove away in **Target Vehile #2**.

10. On December 21, 2018, Milwaukee County Circuit Court Commissioner J.C. Moore signed a warrant authorizing the installation of a GPS tracking device on **Target Vehicle #1**. A GPS tracking device was affixed to **Target Vehicle #1** on Thursday, December 22nd, 2018.

11. On December 26, 2018, Milwaukee County Circuit Court Commissioner J.C. Moore signed a warrant authorizing the installation of a GPS tracking device on **Target Vehicle #2**. A GPS tracking device was affixed to **Target Vehicle #2** on Thursday, December 27th, 2018.

12. On December 27, 2018, the CS made contact with MUJICA at (414) 509-4376 and requested to purchase 20 grams of heroin. The CS showed case agents a text message conversation

8

the CS had with MUJICA in which the CS requested "10." The CS told case agents this meant that the CS wanted to obtain 10 grams of the "white" heroin from MUJICA. MUJICA replied, "Ok." The CS replied, "when should I b ready" and MUJICA replied "white." Case agents believed this to mean MUJICA was going to supply the CS with "white" heroin. The CS said, "Yea original" which case agents believed to mean the CS clarified with MUJICA that the CS wanted the original "white" heroin MUJICA had initially provided the CS.

13.     Later on December 27, 2018, case agents met with CS and searched the CS and the CS' vehicle for any drugs, money, or weapons, with negative results. The CS was provided with $1,000 in pre-recorded buy money. The CS was directed to use $200 of the pre-recorded buy money toward a drug debt owed to MUJICA and $800 of the pre-recorded buy money to purchase the 10 grams of heroin. The CS was also provided covert audio/visual recording equipment. Case agents followed the CS to the 1100 block of North 20th Street in Milwaukee, where the CS parked.

14.     The CS sent a text message to MUJICA which read "Iam ready now that's cool." MUJICA replied, "In 10 minutes can u wait for him out side." Based on prior knowledge, case agents know the CS has met with NUNEZ on the street in the area of the 1100 block of N. 20th Street. A short time later, case agents observed **Target Vehicle #2** drive northbound on N. 20th Street and park behind the vehicle operated by the CS. Case agents observed the CS exit the CS' vehicle and enter the front passenger door of **Target Vehicle #2**. Through the covert audio device case agents overheard a Hispanic male tell the CS the heroin the Hispanic male was providing the CS was the Hispanic male's heroin and not from a different source as the CS had previously purchased. Less than 3 minutes later, the CS exited the front passenger door of **Target Vehicle #2** and re-enter the driver seat of the CS vehicle. The CS vehicle and **Target Vehicle #2** left the area of the controlled buy.

9

15.     Case agents met with the CS at a pre-determined location. The CS turned over to case agents a baggie containing suspected heroin. The CS told case agents that when the CS entered **Target Vehicle #2** the only other occupant was NUNEZ. Upon entering the vehicle, the CS gave NUNEZ the pre-recorded buy money. NUNEZ counted the money and then provided the CS a plastic baggie containing the suspected heroin. The CS said NUNEZ told the CS "this white" was much better quality than the "white" NUNEZ had previously provided the CS.

16.     The baggie of suspected heroin contained one baggie which contained a white rock like substance. Case agents subjected a sample of the suspected heroin to the Nark II #33 Fentanyl Reagent Test and received a positive result for the presence of fentanyl with a weigh of 10.57 grams.

17.     On January 8, 2019, the CS made contact with MUJICA at (414) 509-4376 and requested to purchase 20 grams of heroin. The CS showed case agents a text message conversation the CS had with MUJICA in which the CS requested "Aye ima need 2 10s" and "20 separate it to 2 tens." The CS told case agents this meant that the CS wanted to obtain 20 grams of the "white" heroin from MUJICA. MUJICA replied, "White." The CS replied, "Yea but I'll text when I'm ready" and MUJICA replied "Ok."

18.     Later on January 8, 2019 Case agents met with CS and searched the CS and the CS's vehicle for any drugs, money, or weapons, with negative results. The CS was provided with $1,800 in pre-recorded buy money. The CS was directed to use $200 of the pre-recorded buy money toward a drug debt owed to MUJICA and $1,600 of the pre-recorded buy money to purchase the 20 grams of heroin. The CS was also provided covert audio/visual recording equipment. Case agents followed the CS to the 1100 block of North 20th Street in Milwaukee, where the CS parked.

10

19.     The CS sent a text message to MUJICA which read "Aye how long" quickly followed by "I'm ready I mean." MUJICA replied, "20 minutes be out side." Based on prior knowledge, case agents know the CS has met with NUNEZ on the street in the area of the 1100 block of N. 20th Street. Case agents had a GPS tracking device affixed to **Target Vehicle #2** and observed this vehicle begin to travel to the normal meeting location of the CS and NUNEZ.

20.     A short time later, case agents observed **Target Vehicle #2** park facing southbound on N. 20th Street across from the CS' vehicle.  Case agents observed the CS exit the CS' vehicle and enter the front passenger door of **Target Vehicle #2**. Case agents observed **Target Vehicle #2** drive southbound on N. 20th Street and began traveling a short distance from the original meeting location with the CS.  A short time later, case agents observed **Target Vehicle #2** park southbound on N. 20th Street across the street from the CS vehicle. Case agents observed the CS exit **Target Vehicle #2** and re-enter the CS vehicle. The CS vehicle and **Target Vehicle #2** left the area of the controlled buy.

21.     Case agents met with the CS at a pre-determined location. The CS turned over to case agents a baggie containing suspected heroin. The CS told case agents that when the CS entered **Target Vehicle #2** the only other occupant was NUNEZ. Upon entering the vehicle, the CS gave NUNEZ the pre-recorded buy money while he began driving around the block. The CS after NUNEZ counted the money he provided the CS a plastic baggie containing the suspected heroin. NUNEZ counted the money and then provided the CS a plastic baggie containing the suspected heroin. The CS said NUNEZ told the CS "this white" was much better quality than the "white" NUNEZ had previously provided the CS.

22.     The baggie of suspected heroin contained one baggie which contained a white rock like substance. Case agents subjected a sample of the suspected heroin to the Nark II #33 Fentanyl

11

Reagent Test and received a positive result for the presence of fentanyl with a weigh of 23.06 grams. Case agents subjected a sample to the Nark II #11 Meckes Modified Reagent field test and received a negative result for the presence of heroin.

23.     On February 11, 2019, the CS made contact with MUJICA at (414) 509-4376 and requested to purchase 10 grams of heroin. The CS showed case agents a text message conversation the CS had with MUJICA in which the CS requested "10?" The CS told case agents this meant that the CS wanted to obtain 10 grams of the "white" heroin from MUJICA. MUJICA replied, "The white one, the whitebone." The CS replied, "Yea" and MUJICA replied "Are u ready, Let me know when u ready."

24.     Later on February 11, 2019 case agents met with CS and searched the CS and the CS' vehicle for any drugs, money, or weapons, with negative results. The CS was provided with $900 in pre-recorded buy money in order to purchase 10 grams of heroin. The CS was also provided covert audio/visual recording equipment. At that time, the CS sent a message to MUJICA which read, "I'm pulling up in the area in 5 mins" and MUJICA replied, "I be there in 20 minutes out side please." Case agents followed the CS to the 1100 block of North 20th Street in Milwaukee, where the CS parked.

25.     Case agents observed **Target Vehicle #2** drive northbound on N. 20th Street and park behind the CS' vehicle. Case agents observed the CS exit the CS' vehicle and enter the passenger door of **Target Vehicle #2**. **Target Vehicle #2** began driving northbound on N. 20th Street and case agents maintained surveillance of **Target Vehile #2** as it drove around the area of the controlled buy. Case agents positively identified the driver of the vehicle to be NUNEZ. A short time later, **Target Vehicle #2** travelled southbound on N. 20th street and stopped adjacent to

12

where the CS' vehicle was parked. Case agents observed the CS exit **Target Vehicle #2** and re-enter the CS's vehicle. Both the CS vehicle and **Target Vehicle #2** departed the area.

26.     Case agents met with the CS at a pre-determined location. The CS turned over to case agents a baggie containing suspected heroin. The CS told case agents that when the CS entered **Target Vehicle #2** the only other occupant was NUNEZ. Upon entering the vehicle, the CS gave NUNEZ counted and then gave NUNEZ the pre-recorded buy money while he began driving around the block. The CS after NUNEZ counted the money he provided the CS a plastic baggie containing the suspected heroin.  NUNEZ counted the money and then provided the CS a plastic baggie containing the suspected heroin.

27.     The baggie of suspected heroin contained one baggie which contained a white powdered substance. Case agents subjected a sample of the suspected heroin to the Nark II #11 Meckes Reagent Test and did not receive a result. Case agents subjected a sample of the suspected heroin to the Nark II #33 Fentanyl reagent test and received a positive result for the presence of fentanyl with a weigh of 10.65 grams.

28.     On February 14, 2019 case agents conducted surveillance of  **Target Vehicle #2** and observed NUNEZ exit the residence of 2068 W. Mitchell Street and enter **Target Vehicle #2**. Case agents observed NUNEZ drive **Target Vehicle #2** to the area of the 1300 block of S. 25th Street and park **Target Vehicle #2**. NUNEZ entered a residence, previously unknown to case agents, and after leaving that residence, drove **Target Vehicle #2** around the block several times in what case agents believed was a counter surveillance effort NUNEZ used to determine whether he was being followed by law enforcement, or other possible rival drug dealers.

29.     On March 4th, 2019 at 9:50 a.m.,  the CS made contact with MUJICA at (414) 509-4376 and requested to purchase 10 grams of heroin. The CS showed case agents a text message

13

conversation the CS had with MUJICA in which the CS requested "10?" The CS told case agents this meant that the CS wanted to obtain 10 grams of the "white" heroin from MUJICA. MUJICA replied, "White" The CS replied, "Yup" and MUJICA replied "Are u ready now". The CS replied "30 mins I'm getting up now". The CS then replied, "Hit u up as soon as". MUJICA replied, " Have to in 20 minutes he got to take the car to fix". The CS replied, "Dam I'll have tp get dwn there too tho I didn't know u wud text back that fast lol". The CS stated, "But I'm moving fast as I can right now". MUJICA replied, " Let me know when u ready".

30.     Later on March 4, 2019 case agents met with CS and searched the CS and the CS' vehicle for any drugs, money, or weapons, with negative results. The CS was provided with $1,000 in pre-recorded buy money in order to purchase 10 grams of heroin. The CS was also provided covert audio/visual recording equipment. At that time, the CS sent a message to MUJICA which read, "Be ther in 10 mins or so" and MUJICA replied, "Be out side". Case agents followed the CS to the 1100 block of North 20th Street in Milwaukee, where the CS parked.

31.     Case agents observed **Target Vehicle #1** drive northbound on N. 20th Street and stopped next to the CS' vehicle. Case agents observed the CS exit the CS' vehicle and enter the passenger door of **Target Vehicle #1**. **Target Vehicle #1** began driving northbound on N. 20th Street and case agents maintained surveillance of **Target Vehicle #1** as it drove around the area of the controlled buy. Case agents positively identified the driver of **Target Vehicle #1** to be NUNEZ. A short time later, **Target Vehicle #1** travelled southbound on N. 20th street and stopped adjacent to where the CS' vehicle was parked. Case agents observed the CS exit **Target Vehicle #1** and re-enter the CS's vehicle. Both the CS vehicle and **Target Vehicle #1** departed the area.

32.     Case agents met with the CS at a pre-determined location. The CS turned over to case agents a baggie containing suspected heroin. The CS told case agents that when the CS entered

14

the **Target Vehile #1** the only other occupant was NUNEZ. Upon entering the vehicle, the CS gave NUNEZ counted and then gave NUNEZ the pre-recorded buy money while he began driving around the block. The CS after NUNEZ counted the money he provided the CS a plastic baggie containing the suspected heroin. NUNEZ counted the money and then provided the CS a plastic baggie containing the suspected heroin.

33.     The baggie of suspected heroin contained one baggie which contained a white powdered substance. Case agents subjected a sample of the suspected heroin to the Nark II #11 Meckes Reagent Test and did not receive a result. Case agents subjected a sample of the suspected heroin to the Nark II #33 Fentanyl reagent test and received a positive result for the presence of fentanyl with a weigh of 12.23 grams.

34.     On March 19, 2019 case agents conducted physical surveillance of Ivan NUNEZ who was operating **Target Vehile #2**. NUNEZ parked on S. 23rd St south of W. Burnhams St at approximately 6:00 p.m. Case agents observed NUNEZ parked in this location for approximately one hour. Case agents stated NUNEZ did not exit the vehicle at any time nor did he meet with anyone. Case agents contacted the Milwaukee Police Department and requested they conduct a "welfare check" on NUNEZ in attempts to obtain the identification NUNEZ is currently using. At approximately 7:03 p.m., a fully marked Milwaukee Police Department squad arrived at this location and conducted a "welfare check" on NUNEZ. NUNEZ stated that he was new to the area and was waiting for his girlfriend. NUNEZ provided the Milwaukee Police Officer a valid Massachusettes driver's license. The license contained the name of Omar C. Gonzalez with a D.O.B. 04/26/1982 and an address of 240 High Street 1, Lawrence, MA 01841. Case agents state that this is a valid driver's license and it does contain a photograph of Ivan NUNEZ. Case agents

15

have determined that this is a false identificeation and are attempting to locate the documentation that NUNEZ provided to obtain the driver's license.

35. The Drug Enforcement Administration is investigating Ananda MUJICA and Ivan NUNEZ for violations of Title 21, United States Code, Sections 841 and 846. The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with a confidential source, information from other law enforcement officers, documentary evidence, telephone toll data, controlled buys of drugs, and physical surveillance of members of this drug trafficking organization (DTO) to facilitate their drug trafficking activities with each other and their associates.

36. Task Force Officers of the Drug Enforcement Administration have received information concerning the illegal drug trafficking activities of Ananda MUJICA and Ivan NUNEZ from a confidential source (CS). Case agents believe the CS is a credible person because the CS has been providing reliable information to DEA since December 2018. Additionally, the CS has conducted multiple controlled purchases of heroin, fentanyl, and cocaine resulting in the seizure of controlled substances. The CS' information concerning MUJICA and NUNEZ has been corroborated by telephone records, Wisconsin Department of Transportation records, Circuit Court records, physical surveillance, and through controlled drug purchases. The CS' information has never been found to be false or misleading. The CS has a criminal history that includes arrests for Manufacture/Deliver Heroin and Recklessly Endangering Safety. The CS has a pending criminal case and is receiving consideration for those charges in return for this information and assistance.

37. Based on information obtained through physical surveillance and controlled buys, I believe that Ananda MUJICA and Ivan NUNEZ are using **Target Vehile #1 and Target Vehile**

16

**#2** to further their drug trafficking activities. Based upon my own observations, I know that **Target Vehile #1 and Target Vehile #2** are presently within the Eastern District of Wisconsin.

38.     In order to track the movement of **Target Vehile #1 and Target Vehile #2** effectively and to decrease the chance of detection, I seek to continue to track **Target Vehile #1 and Target Vehile #2** while they are in the Eastern District of Wisconsin and elsewhere. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, removal, and maintenance of the tracking device during both daytime and nighttime hours. This authorization is essential due to the vehicle regularly being parked in close proximity to 2608 West Mitchell Street, Milwaukee, Wisconsin, the residence of MUJICA and NUNEZ. Due to the proximity of the vehicle parking locations to the residence, installation and removal of the tracking device would be extremely difficult to accomplish during daytime hours without being detected.

39.     On February 19, 2019, the Honorable William E. Duffin United States Magistrate Judge for the Eastern District of Wisconsin signed a warrant authorizing the installation and monitoring of an electronic tracking device for **Target Vehicle #1** for a period of 45 days. Case agents had previously installed a tracking device on **Target Vehicle #1** on December 22, 2018 based upon a State of Wisconsin Search Warrant that was authorized by Milwaukee County Circuit Court Commissioner J.C. Moore while **Target Vehicle #1** was parked in front of 1656 S. 26th St in the City of Milwaukee. Case agents obtained the search warrant from the Honorable William E. Duffin United States Magistrate Judge for the Eastern District of Wisconsin and utilized this as an extension of the original search warrant they obtained. The monitoring period is scheduled to expire

17

on April 5, 2019. On February 21, 2019, the Honorable William E. Duffin United States Magistrate Judge for the Eastern District of Wisconsin signed a warrant authorizing the installation and monitoring of an electronic tracking device for **Target Vehicle #2** for a period of 45 days. Case agents had previously installed a tracking device on **Target Vehicle #2** on December 27, 2018 based upon a State of Wisconsin Search Warrant that was authorized by Milwaukee County Circuit Court Commissioner J.C. Moore while **Target Vehicle #2** was parked in front of 1656 S. 26th St in the City of Milwaukee. Case agents obtained the search warrant from the Honorable William E. Duffin United States Magistrate Judge for the Eastern District of Wisconsin and utilized this as an extension of the original search warrant they obtained

40. Since December of 2018, case agents have monitored the location of **Target Vehicle #1 and Target Vehicle #2** on a regular basis and case agents have been able to confirm that Nunez and Mujica are utilizing **Target Vehicle #1 and Target Vehicle #2** to further their drug distribution activities. For example, the GPS location data has revealed that **Target Vehicle #1 and Target Vehicle #2** are frequently in the area of 1320 S. 25th Street, and case agents have identified this residence as a known drug house. Case agents have observed Nunez meet with two individuals at 1320 S. 25th St that are known heroin distributors in the City of Milwaukee. Cases agents have observed Nunez make multiple stops daily at this residence and believe that Nunez is supplying this residence with narcotics. These stops are short term stops, lasting less than ten minutes. GPS location data for these vehicles has also revealed that Nunez makes multiple stops and four

18

different United States Post Office locations in the city of Milwaukee. Case agents have determined that Nunez purchases money orders at the post offices with his drug proceeds to pay his supplier. GPS location data for these vehicles has further revealed that Nunez's vehicles travel to the Love's Travel Stop in the City of Oak Creek. Case agents have determined that Nunez meets with an unknown truck driver at this truck stop once every month. Case agents believe that this is a possible location where Nunez obtains his narcotics for distribution. Case agents state that the vehicle is stopped in the semi truck parking lot at the business for less than ten minutes every time the vehicle has been there. Case agents have been unable to identify the truck driver at this time or the truck they were operating. GPS location data for Nunez and Mujica's vehicles has also revealed several stops on the southside of Milwaukee, which based upon their training and experience and the investigation to date, case agents believe may be related to Nunez and Mujica's stash locations of heroin and other customers. Case agents have determined based on a previous narcotics investigation that NUNEZ had a source of supply in the Lawrence Massachusettes area. Case agents have determinded based upon the current GPS unit installed on **Target Vehicle #2** that NUNEZ traveled to the Bronx in New York on January 31, 2019. NUNEZ spent several hours in the Bronx and travelled to Lawrence Massachusettes on the early morning hours of February 1, 2019. Case agents stated NUNEZ drove to the area of 240 High Street in Lawrence, MA. Case agents stated NUNEZ stopped in the area for approximately 14 minutes and then immediately travelled back to the Bronx in New York. NUNEZ spent the night in New York and then

19

travelled back to Milwaukee, WI and returned during the early morning hours of February 3, 2019. Case agents believe that NUNEZ source of supply may be located in the Lawrence, MA, area. Case agents are currently attempting to identify the specific locations on the southside to which MUJICA and NUNEZ are traveling as well as identifying the truck driver NUNEZ meets with and the locations in New York and Massachusettes he frequents.

41. Based on CS information, physical surveillance, and controlled buys, case agents believe that there is probable cause to believe that Ivan NUNEZ and Ananda MUJICA are violating and will continue to violate 21 U.S.C. §§ 841(a)(1) and 846 and that there is probable cause to believe that NUNEZ and MUJICA are using **Target Vehicle #1** and **Target Vehicle #2** in connection with violations of 21 U.S.C. §§ 841(a)(1) and 846. Case agents believe that obtaining the location information for **Target Vehicle #1** and **Target Vehicle #2** will likely lead to evidence of these crimes, namely, the location of storage locations of contraband and drug proceeds and assist in identifying the location of other drug distributors and sources of supply in this drug trafficking organization. Case agents are requesting an extension of the warrant authorizing the monitoring of the location of **Target Vehicle #1 and Target Vehicle #2** for another 45 days to further investigate Nunez and Mujica's activities and to assist in identifying the location of storage locations of contraband and drug proceeds and assist in identifying the location of other drug distributors and sources of supply in this drug trafficking organization.

20

Based upon my own observations, I know that **Target Vehicle #1** and **Target Vehicle #2** are presently within the Eastern District of Wisconsin.

42. In order to track the movement of **Target Vehicle #1** and **Target Vehicle #2** effectively and to decrease the chance of detection, I seek to place the tracking devices in or on the target vehicles while they are in the parked in the area of 2608 W. Mitchell St, Milwaukee, Wisconsin in the State and Eastern District of Wisconsin. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation and removal of the tracking device during both daytime and nighttime hours.

## AUTHORIZATION REQUEST

43. Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to Federal Rule of Criminal Procedure 41 authorizing periodic monitoring of the tracking devices during both daytime and nighttime hours for a period of 45 days following installation of the device. The tracking devices may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

44. It is further requested that in the event that **Target Vehicle #1** or **Target Vehicle #2** travels outside the territorial jurisdiction of the court, the order authorize the continued monitoring of the electronic tracking device in any jurisdiction within the United States, pursuant to 18 U.S.C. § 3117.

21

45.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the owner or user of **Target Vehicle #1** and **Target Vehicle #2** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).